SCOTT v. WEISS et al. (two cases).

WEISS v. SCOTT et al. (two cases).

Court of Appeals of District of Columbia.

Submitted January 12, 1928. Decided April 2, 1928.

Nos. 2012–2015.

1. Patents ⊚⟹91(4)—Testimony that vulcanized rubber samples could not have been made with certain accelerator held insufficient to overcome evidence that they were so made.

Testimony in interference proceedings that samples of vulcanized rubber produced by one party could not have been made by use of triorthotolyl guanidine accelerator *held* insufficient to overcome evidence that they were so made, in absence of evidence that precise conditions prevailing in production thereof governed making of samples by other party many years afterward.

2. Patents ⊚⟹91(4)—Evidence held to prove that party to interference proceeding reduced invention of rubber vulcanization accelerator to practice and promptly applied for patent before other parties.

Evidence in interference proceedings *held* to prove that one party reduced his invention of triorthotolyl guanidine rubber vulcanization accelerator to practice and promptly filed application for patent prior to other parties.

3. Patents ⊚⟹113(8)—Court of Appeals cannot determine patentability on appeal from decisions awarding priority of invention.

On appeal from decisions of Commissioner of Patents, awarding priority of invention to one party in interference proceedings, Court of Appeals is concerned with question of priority only, and cannot determine whether counts of interference are patentable.

4. Patents ⊚⟹106(2)—Counts of interference claiming process of vulcanizing rubber by diorthotolyl guanidine accelerator held broad enough to read on original application for patent on triorthotolyl guanidine accelerator.

Counts of interference claiming process of vulcanizing rubber by combination of diorthotolyl guanidine with rubber compound, and vulcanized rubber produced by such process, *held* broad enough to read on claimant's original application for patent on process of vulcanization by accelerator triorthotolyl guanidine, as to which his priority was sustained in another interference.

5. Patents ⊚⟹91(4)—Evidence held to show that applicant for patent on diorthotolyl guanidine vulcanization accelerator never reduced conception to practice.

Evidence in interference proceedings *held* to show that one, filing application for patent on diorthotolyl guanidine rubber vulcanization accelerator over two years after another filed application for patent thereon, never reduced his conception to practice, and that work done by him in developing such accelerator was no more than an abandoned experiment.

6. Patents ⊚⟹91(4)—Claim of conception and reduction to practice of invention of diorthotolyl guanidine vulcanization accelerator held not established by credible evidence.

Claim of conception and reduction to practice of invention of diorthotolyl guanidine rubber vulcanization accelerator by one of three parties to interference proceedings *held* not established by credible evidence.

7. Patents ⊚⟹91(4)—Evidence held to show that last applicant for patent on diorthotolyl guanidine vulcanization accelerator first conceived invention, reduced it to practice, and tested product.

Evidence in interference proceedings *held* to show that party, who was last to file application for patent on diorthotolyl guanidine rubber vulcanization accelerator, first conceived invention, reduced it to practice, and tested product.

Appeal from the Commissioner of Patents.

Interference proceedings between Winfield Scott and Morris L. Weiss and Ralph V. Heuser, and between Weiss and Scott and Heuser. From decisions of the Commissioner of Patents, awarding priority of invention to Heuser, Scott and Weiss appeal. Affirmed in part, and modified in part.

E. J. Prindle, of New York City, and C. H. Biesterfeld, of Wilmington, Del., for Scott.

J. S. Wooster, of New York City, for Weiss.

Odin Roberts and C. S. Grover, both of Boston, Mass., for Heuser.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and SMITH,

Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. This is a consolidated appeal from decisions of the Commissioner of Patents, awarding priority of invention to Ralph V. Heuser in three-party interference No. 47394 and three-party interference No. 49357.

Morris L. Weiss, in his preliminary statement, alleges that he conceived and disclosed his invention on or about February 1, 1919; that he made his first written description of his invention on October 15, 1920, and reduced it to practice on or about December 15, 1920. Weiss filed his application for a patent on August 8, 1921.

Ralph V. Heuser's preliminary statement alleges that he conceived and disclosed his invention on June 16, 1920, and that he reduced it to practice on the 15th of July, 1920. Heuser's application for a patent on the subject-matter of interference No. 47394 was filed on January 27, 1921.

Scott in his preliminary statement declares that he conceived the invention on September 20, 1920, and disclosed it in October, 1920; that his invention was first described in writing and reduced to practice by him on the 15th of March, 1921. Scott filed his application for a patent on June 20, 1922.

The invention involved in both interferences is a process for vulcanizing rubber by adding to heated crude rubber, sulphur, and other materials an orthotolyl guanidine vulcanization accelerator, thereby increasing the elasticity and quality of the rubber.

In interference No. 47394 the issue is defined in three counts which are as follows:

"1. The process of treating rubber or similar materials which comprises combining with the rubber compound an orthotolyl guanidine.

"2. The process of treating rubber or similar materials which comprises combining with the rubber compound a vulcanizing agent and an orthotolyl guanidine.

"3. A vulcanized compound of rubber or similar material combined with a vulcanizing agent and an orthotolyl guanidine."

It is established by the evidence pertinent to interference No. 47394 that Heuser was employed by the Atlantic Dyestuffs Company on January 1, 1920, for the purpose of determining the value of a large number of chemical compounds as accelerators for the vulcanizing of rubber. Heuser prepared the several chemical compounds for ultimate use, and, after giving to each of them a number, delivered them to H. B. Morse, whose duty it was to mix them with crude rubber and sulphur for vulcanization. After vulcanizing the rubber mixed with any of the chemical compounds prepared by Heuser, the rubber was tested by Morse, who made a report of the result of the tests to Heuser or to Burrage, the manager of the Atlantic Dyestuffs Company. On June 16, 1920, Heuser started to work on triorthotolyl guanidine (TOTG) as a vulcanization accelerator. His first preparation of that compound, marked No. 18, was completed in July, 1920, and was sent through Burrage to Morse to be tested. On August 9, 1920, Morse made a report of his tests to Burrage, and in that report took occasion to say that No. 18, TOTG, was slightly weaker than the company's accelerator "Akbar," but that it had no discoloring effects or accelerating effects or accelerating power at low temperatures, and that as an accelerator it appeared to have no bad qualities, and had all of the good qualities sought for in an accelerator. Morse recommended that the efforts of those concerned be concentrated for the present on the accelerator, TOTG. In consequence of that recommendation, the Atlantic Dyestuffs Company, about the middle of November, 1920, installed in one of its factories apparatus for the manufacture of TOTG, and in the plant so established TOTG was manufactured for commercial purposes. On January 27, 1921, and about two months after the completion of the plant, Heuser filed his application for a patent for the process of vulcanizing rubber by heating it with the accelerator TOTG.

[1] The testimony on behalf of Scott, to the effect that the samples of rubber produced by Heuser could not have been made by the use of TOTG, is not sufficient to overcome the evidence submitted by Heuser that the samples were so made. The tests upon which Scott relies were made many years after Heuser's samples were produced, and there is nothing in the record which would justify the conclusion that the precise conditions prevailing in the production of Heuser's samples governed the making of the samples evolved by Scott's experts. Apparatus, temperature, proportion of components used, and the individual equation cut some figure in making experiments and in reproducing materials. Unless reproductions are made under identically the same conditions, they may well differ in some degree from the original in quality and appearance. The differences between Heuser's samples of TOTG and those produced by Scott's experts hardly justify the conclusion that TOTG was not used by Heuser in making his samples. To say that Heuser did not use TOTG in

making his samples would simply mean that he and his witnesses made false reports and gave testimony that was untrue. We cannot go that far. Indeed, to do so would result in ignoring the testimony of credible witnesses, and the fact that the Atlantic Dyestuffs Company actually constructed an apparatus and put it in operation for the purpose of using Heuser's TOTG as an accelerator in the production of vulcanized rubber.

[2] The evidence clearly proves that Heuser reduced his invention of TOTG to practice and promptly filed an application for a patent therefor prior to Weiss and Scott.

[3] The contention that the counts of the interference are not patentable cannot be sustained. This court is concerned with the question of priority only, and that is the single issue which it is called upon to determine. Hisey v. Peters, 6 App. D. C. 68, 70; Sobey v. Holsclaw, 28 App. D. C. 65; Elsom v. Bonner, 46 App. D. C. 230, 233, 234; Lynch v. Headley, 52 App. D. C. 269, 270, 285 F. 1003.

Priority of invention as to counts 1, 2, and 3 of interference No. 47394 was properly awarded to Heuser.

[4] The subject-matter of interference No. 49357 is presented in 16 counts, of which counts 1, 3, and 5 are generic to "an aryl substituted guanidine having an alkyl group in ortho position." The following counts are typical of the subject-matter of the interference and the issue to be determined:

"1. The process of treating rubber or similar materials which comprises combining with the rubber compound an aryl substituted guanidine having an alkyl group in the ortho position.

"2. The process of treating rubber or similar materials which comprises combining with the rubber compound diorthotolyl guanidine."

"11. A vulcanized rubber product obtainable by inducing a reaction between rubber, a vulcanizing agent, and a ditolyl guanidine."

Heuser, in his original application filed January 27, 1921, did not disclose or claim diorthotolyl guanidine (DOTG) as a compound for accelerating the vulcanization of rubber, and consequently in interference No. 47394 he could not assert priority as to the subject-matter of counts 2, 4, and 6 to 16 involved in interference No. 49357. On the 18th of August, 1924, however, Heuser filed an application in which he made claim to the process of vulcanizing rubber by employing DOTG as an agency and to the vulcanized rubber produced by that process. Counts 1, 3, and 5 of interference No. 49357 are broad enough to read on Heuser's original application, and, as his right to priority as to those counts was in effect sustained in interference No. 47394, our consideration of interference No. 49357 will be limited to counts 2, 4, and 6 to 16.

[5] It appears from the testimony submitted on behalf of Heuser that, under his contract with the Atlantic Dyestuffs Company, he prepared, during the year 1920, about 30 chemical compounds and had them tested to determine their comparative value and efficiency as accelerators for the vulcanization of rubber. Among the compounds so prepared was diorthotolyl guanidine (DOTG), which was marked No. 38 and submitted to Morse for testing on the 17th of August, 1920. Morse received the DOTG sent by Heuser and used it in the vulcanization of rubber on or about the 19th of August, 1920. The chemical compound made by Heuser yielded about 2 grams of DOTG, which amount was capable of accelerating only about 300 grams of rubber prepared for vulcanization. Morse made that one test and no more of DOTG. That Morse did not consider that one test at all conclusive is established by his letter to Heuser, dated August 20, 1920, which reads as follows:

"In testing out sample No. 38, I found that there was only 2 grams of this substance. What little test I was able to make with that amount was very interesting, and I wish you would make me up about 2 ounces, so that I may test it first."

Morse testified that the word "first" should have been further, and the substitution of the word "further" for "first" definitely proves that Morse was not finally satisfied that No. 38 was as good an accelerator as No. 18. Morse did testify that he told Heuser that No. 38 was stronger than No. 18, but he is contradicted by Heuser's data sheet, which records that the strength of No. 38 was about the same as No. 18. Heuser would not have made such a record as that on his data sheet, if Morse had given him information to the contrary, and especially if Morse had told Heuser, as Morse says he did, that No. 38 was a better accelerator than No. 18. Moreover, if the investigations of Heuser and the tests of Morse furnished ground for the reasonable belief that DOTG was a better and stronger accelerator than any of the other chemical compounds tested, why should the Atlantic Dyestuffs Company, for whom Heuser and Morse were working, install in November, 1920, *and after the tests were made,* apparatus for the manufacture of TOTG? That fact loses none of its sig-

nificance when it is remembered that Morse in that very month made tests of various accelerators, including TOTG, and did not test DOTG.

It is true that on June 21, 1921, samples of DOTG were sent to Glancy, of the Hood Rubber Company, at Watertown, and that those samples were tested about July 8, 1921. Glancy testified that the tests indicated to him that No. 38 was a very powerful accelerator, but that he was not satisfied that proper delivery of the material could be made. In consequence, the Hood Rubber Company declined to accept No. 38 as an accelerator. Glancy's testimony does not prove that DOTG was a better accelerator than TOTG, and falls short of establishing a reduction to practice.

Heuser admits that research work as to DOTG was temporarily abandoned until the end of September, 1921, at which time he conceived of a new and improved way of making DOTG, and that he worked out the new process in March, 1922. He says that in April, 1922, a small scale plant was erected for the purpose of producing, in the improved way, commercial DOTG, and that several barrels of DOTG were made in that plant in the summer of 1922. The barrels were stored in a spare room of the factory, where six months later they were destroyed by fire. Whether any of the DOTG so produced was used for the vulcanization of rubber does not appear. The working out by Heuser in September, 1921, of a new process for making DOTG, does not support his contention that he successfully reduced his invention to practice in 1920.

Notwithstanding the tests made by Morse in August, 1920, the tests made by Glancy in July, 1921, and the production by a new method of several barrels of DOTG in the summer of 1922, it is notable that none of Heuser's DOTG was put to practical use for the manufacture of vulcanized rubber. Failure to do so probably would not amount to much, if it were not for the fact that Heuser did not mention DOTG in the application for a patent filed by him in January, 1921, and did not think it worth while to apply for a patent on DOTG until August 18, 1924, more than two years after Scott filed his application for a patent on DOTG, and nearly two years after the publication by Scott of an article on the use of DOTG as an accelerator for the vulcanization of rubber. Heuser admits that he read Scott's article on the use of DOTG as an accelerator for the vulcanization of rubber, which article was published in the India-Rubber Journal of September 16, 1922, and October 7, 1922. That article furnished him information that Scott was in the field. Nevertheless he made no move to patent his invention until after he had heard in April, 1924, Scott's testimony as to the use of DOTG as an accelerator, at which time the advisability of filing an application for DOTG was discussed by himself and counsel.

The inadequate tests made by Morse, the tests and rejection of DOTG as an accelerator by Glancy, certainly do not establish that DOTG, as conceived by Heuser, was of practical use as an accelerator in the vulcanization of rubber. Heuser's long delay in applying for a patent, and his application for a patent on TOTG, without mentioning DOTG, is convincing that he never reduced to practice his conception of DOTG, and that whatever work was done by him in developing DOTG as an accelerator was nothing more than an abandoned experiment. Mason v. Hepburn, 13 App. D. C. 86, 94, 95; Warner v. Smith, 13 App. D. C. 111, 114, 115, 116; Howard v. Hey, 18 App. D. C. 142, 144, 145; Quist v. Ostrom, 23 App. D. C. 69, 74; Vanore v. Improta (No. 2001) — App. D. C. —, 25 F.(2d) 918, decided concurrently herewith.

[6] Weiss contends that the use of DOTG was conceived by him and disclosed on February 19, 1919. Weiss testified that he disclosed it on that date to Mr. W. H. Daniels, of the Republic Rubber Company, and told Daniels that DOTG would probably be better than diphenyl guanadine (DPG) because toluidine was known to be somewhat better than aniline as an accelerator for vulcanization. Weiss also said to Daniels that he would like to prepare some DOTG, but, since toluidine was more expensive than analine, and also more difficult to get, that he would prefer to work on a process for making DPG. Weiss never called Daniels as a witness, and was flatly contradicted by Kinsman, a witness for Scott, who testified that toluidine was offered by the Du Pont de Nemours Company at a price 10 cents per pound lower than aniline, and that it would have been more profitable to manufacture and sell DOTG than DPG, even if the raw materials for both accelerators were available at the same cost. Weiss stated that he not only disclosed his idea of using DOTG as a rubber accelerator to Daniels, but also to Woodward and Doty, in April, 1920. Weiss's contract, dated April 13, 1920, with Doty and Woodward, and his contract with the Dovan Chemical Corporation, executed in March, 1921,

mention a process of making DPG, and do not refer either to DOTG or to disubstituted guanidines. Weiss in his application for a patent for a process of making DPG dated July 2, 1921, makes no mention of DOTG or of his invention thereof. Weiss stated that he made diorthotolyl thiourea, the intermediate of DOTG, in his home, from orthotoluidine which he found in the plant taken over from the Electrosynth Chemical Company. He testified that his wife decidedly objected to the foul smell produced by his chemical work, and to the use of their home as a laboratory. His wife was not called to corroborate her husband's statement as to his chemical activities in the home. Dr. Elley testified positively that the amount of hydrogen bisulphide which Weiss would have had to use in producing DOTG would have caused a disagreeable odor throughout the apartment house. Friedel, who occupied the apartment immediately above that of Weiss during the fall of 1920, stated that he never smelled any odor produced by such chemicals. Abrams, purchasing agent and former president of the Electrosynth Chemical Company, testified that that company had no occasion to use orthotoluidine, and that there was no orthotoluidine in the plant at any time while it was occupied by the Electrosynth Chemical Company. Weiss may have made DOTG in the fall of 1920, but, if he did, that fact is not corroborated by other witnesses, and is not in accord with his actions and business conduct. A representative of the Dovan Chemical Company, with which Weiss is connected, attempted to influence the testimony of Dr. Webber concerning Weiss' alleged experiments with DOTG. Weiss himself suggested to Henry Abrams not to say or remember too much about what had occurred at the Electrosynth plant. Conduct of that kind by parties in interest necessarily discredits the case which they seek to sustain.

The court must hold that Weiss' claim of conception and reduction to practice of DOTG has not been established by credible evidence.

[7] Scott testified that he disclosed the invention of DOTG to Dr. Grafton, of the Quaker Rubber Company, about September 20, 1920. Dr. Grafton corroborated Scott, and testified that Scott had completed the making of DOTG about the latter part of February, 1921, and on March 15 produced samples of rubber, the vulcanization of which was accelerated by DOTG, which samples were tested on March 16, 1921. That Scott made comparative sample tests of DOTG and diphenyl guanidine as accelerators is confirmed by documentary evidence, which discloses the tensile strength and percentage of elongation of the rubber compounded.

The evidence on behalf of Scott satisfies the court, first, that Scott conceived the use of DOTG as a rubber accelerator on the 20th of September, 1920; second, that he actually reduced his conception to practice, by using DOTG as an accelerator on March 15, 1921, and by testing the vulcanized product on March 16, 1921, in order to determine the efficiency of DOTG as an accelerator.

In interference No. 49357, priority of invention of the subject-matter of counts 1, 3, and 5 was properly awarded to Ralph V. Heuser. Priority of invention of the subject-matter of counts 2, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16 should have been awarded to Winfield Scott. The decision of the Commissioner of Patents, in so far as it awards priority of invention to Ralph Heuser on counts 1, 2, and 3 of interference 47394 and counts 1, 3, and 5 of interference 49357, is affirmed. The decision of the Commissioner of Patents, in so far as it awards priority of invention to Ralph V. Heuser as to counts 2, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16 of interference 49357, is reversed, and priority as to said last-named counts is awarded to Winfield Scott.

Affirmed as to interference No. 47394, and modified as to interference No. 49357.